UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
_____

PAIGE RADKE,

    Plaintiff,

        v.                                          Case No. 21-CV-00247

CITY OF WAUWATOSA, et al.

    Defendants.
_____

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT
_____

        Defendants City of Wauwatosa, City of West Allis, Jacob Kaye, Dennis McBride, Barry Weber, Luke Vetter, Shane Wrucke, and Chris McAtee, by their attorneys, Wirth + Baynard, submit this Reply Memorandum in Support of their Motion for Summary Judgment seeking dismissal of all claims against them.

### INTRODUCTION

        Plaintiff's Response is comprised of conclusory arguments and speculation that falls short of demonstrating Section 1983 liability against of the of the Defendants. Put simply, Plaintiff has no idea who caused her harm and failed to make any meaningful connection to any of the Defendants through discovery. All Plaintiff can prove is that she violated the City of Wauwatosa Curfew and law enforcement responded to the violent actions of the crowd in which she was a part of. Yet, enforcement of the law is not a Constitutional Violation, regardless of whether or not Plaintiff believes the Curfew was enacted appropriately.

        Plaintiff's Response to Defendants' Proposed Findings of Fact highlight their inability to raise any material dispute as it relates to any alleged constitutional violation. Rather than cite to

any evidence from the record, Plaintiff merely states that she disputes certain facts and cites to her own brief. Her responses thus violate Civil Local Rule 56(b)(2)(B)(i), which required her to cite evidence from the record. Thus, there is no genuine disputes of fact in this matter and the Court must grant the Defendants' Motion for Summary Judgment.

**DISCUSSION**

**I. PLAINTIFF FAILED TO PRESENT ANY ADMISSIBLE EVIDENCE TO SUPPORT ANY CONSTITUTIONAL CLAIM.**

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Once a party has made a properly supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial. *Id*. (quoting Fed. R. Civ. P. 56(e)). The only way to do so is by submitting relevant evidence that would be admissible at trial—mere speculation and conjecture that raises only a "metaphysical doubt" is insufficient to withstand summary judgment. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 985 (7th Cir. 2020).

Plaintiff failed to propound any evidence sufficient to demonstrate her claims that the Curfew was unconstitutionally vague or selectively enforced. Instead, she relies on hearsay statements, innuendo, and speculates that the purpose of the Curfew was discriminatory. Plaintiff's approach flies in the face of straightforward rules of summary judgment procedure. FRCP 56 states that a party "must" support a putative dispute of fact by citing to evidence or by showing that the materials the movant cited do not establish the fact at issue. Fed. R. Civ. P. 56(c)(1)(A)–(B); see also *Hamm v. Nestle USA, Inc.*, No. 12-CV-2427, 2013 WL 4401328, at *1 (N.D. Ill. Aug. 15, 2013) (attempting to dispute a fact without citing evidence, but instead only referencing a party's

2

own proposed fact statements, is improper). Thus, all of Defendants' proposed factual findings should be accepted as undisputed for the purpose of summary judgment, notably the following:

> The main purpose of instituting the curfew was to prevent a disaster similar to Kenosha, Wisconsin, where two protesters were killed, and multiple businesses and City structures were burned to the ground. (Dkt. 33, ¶¶ 14-16)
>
> The Emergency Curfew sought to protect persons and property, and systems and services, such as transportation, health, police and other critical systems in Wauwatosa. (Dkt. 33, ¶ 17)
>
> The Proclamation's language demonstrates that the City and McBride had no intent to selectively enforce the curfew to prohibit First Amendment activities based on a person's race, the content of his or her speech, or any other factor. (Dkt. 33, ¶ 21)
>
> Law Enforcement personnel at Wauwatosa City Hall made multiple unlawful assembly announcements pursuant to the emergency curfew and ordered that the crowd disperse. (Dkt. 33, ¶ 24)
>
> The crowd did not disperse and threw water bottles, flashed strobe lights, and pointed lasers at law enforcement personnel. (Dkt. 33, ¶¶ 26-27)
>
> Plaintiff did not have any contact or communication with any of the Defendant Officers and she violated the Curfew by protesting on Wauwatosa City streets after 7 p.m. and obstructed traffic. (Dkt. 33, ¶¶ 28, 30)
>
> No Defendant Officer used force or observed Plaintiff on October 9, 2020. (Dkt 33, ¶¶ 30-32, 36, 37, 40-41, 44, 50-52, 54, 57, 59)
>
> Gas and other less lethal munition were deployed after the unlawful assembly began to take violent actions towards law enforcement. (Dkt 33, ¶ 49)

## II. PLAINTIFF WAIVED HER FOURTEENTH AMENDMENT CLAIMS, AND ALL CLAIMS AGAINST JOHN DOES 1-10, THE CITY OF WEST ALLIS, AND JACOB KAYE.

Plaintiff concedes to the dismissal of her claims against John Does 1-10, the City of West Allis, Jacob Kaye, as well as her Fourteenth Amendment claims. (Dkt. 36, p. 1) Furthermore, this Circuit considers a failure to respond as a waiver of those claims. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1075 (7th Cir.2016)(concluding that the counts were waived since Plaintiffs never responded to Defendants' arguments) *Betco Corp., Ltd. v. Peacock*, 876

3

F.3d 306, 309 (7th Cir. 2017) (underdeveloped or conclusory arguments in response to motion for summary judgement constitutes waiver); *Waltonv. U.S. Steel Corp.*, 497 F. App'x 651, 655 (7th Cir. 2012) (non-movant waived argument "by failing to raise it in response to summary judgment"); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) ("We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions."); *see also U.S. Bank Nat. Ass'n v. Long* at *5.

The Fourteenth Amendment claims, Defendant John Does, City of West Allis, and Jacob Kaye must be dismissed.

### III. PLAINTIFF'S FIRST AMENDMENT RIGHTS WERE NOT VIOLATED.

Plaintiff's Response argues that the Curfew was not narrowly tailored or content neutral and that the Curfew was unlawfully enacted. Plaintiff's claim is based on her subjective belief that there was no emergency at the time the Curfew was enacted, and that the common council could have met prior to its enactment. *See* (Dkt. 36, p. 4-5) Plaintiff's subjective personal belief that there was no emergency does not invalidate the Curfew. Regardless, the Curfew has since expired, and no state court has ruled that the Curfew was unlawfully enacted.

Plaintiff's remaining arguments are strikingly similar to those made by the plaintiffs in *Rodriguez v. City of Green Bay*, which was recently decided by this Court. No. 20-C-1819, 2022 WL 823948, at *4 (E.D. Wis. Mar. 18, 2022). In *Rodriguez*, the City of Green Bay enacted a similar Ordinance that provided:

> "[P]ursuant to sections 323.11 and 323.14(4) of the Wisconsin Statutes, the City of Green Bay hereby declares a local State of Emergency for the City of Green Bay, and order an emergency curfew in the entire City of Green Bay for all persons from 9:00 p.m. until 06:00 a.m. beginning on June 1st, 2020, and ending on June 8th, 2020, unless earlier terminated if the Mayor and Emergency Operations Manager determine that the conditions giving rise to the emergency no longer exist. All persons shall cease vehicular and pedestrian travel on the public way, streets, sidewalks and highways and return to their homes,

4

places of work or other convenient place. The following individuals, working in their official capacity are exempt from this order: government personnel, emergency services personnel, utility services providers, medical providers, social services providers, and credentialed press. Persons experiencing homelessness or fleeing dangerous domestic situations are also exempt from this order. Intentional failure to comply with this order is subject to a forfeiture of not more than $200.00 pursuant to Wis. Stat. sec. 323.28."

There, the plaintiffs were arrested on June 3, 2020 for violating an identical City of Green Bay curfew. *Id.* at 3. The plaintiffs argued that the curfew ordinance deprived them of their Constitutional rights, and that the curfew ordinance's true purpose was to stop Black Lives Matter protests. *Id.* at 3, 4. The Court ruled that the curfew was content neutral because it prohibited all nonexempt individuals from being out from 9:00 p.m. to 6:00 a.m., regardless of the content of their speech or any message they intended to convey and was also narrowly tailored to a significant government interest to address the violence and vandalism occurring at night. *Id.* at 3. The Court granted the defendants summary judgment motion and dismissed the plaintiff's claims. *Id.* at 5. The same conclusion must be reached here.

Here, Plaintiff argues that because the Curfew was from 7 p.m. to 6 a.m., most people would not be able to protest due to 9 a.m. to 5 p.m. work schedules. The same argument was rejected in *Rodriguez* reasoning, that plaintiffs could have protested anywhere during those curfew hours except on City streets. Similarly, Plaintiff Radke could have protested indoors. Plaintiff Radke could have protested in a different city. Plaintiff Radke could have protested online. The list is endless, and Plaintiff had ample opportunities available to her to protest.

Moreover, the First Amendment does not provide that Plaintiff can break the law and obstruct traffic in order to protest and she would not have been allowed to protest on the streets even during non-curfew hours. *Marcavage v. City of Chicago*, 635 F. Supp. 2d 829, 839 (N.D. Ill. 2009), *aff'd in part and remanded*, 659 F.3d 626 (7th Cir. 2011) (ruling that plaintiffs do not have

5

the "right to communicate their views at all times and places or in any manner that may be desired") The limited nighttime Curfew here, which only restricted protesting on Wauwatosa City streets, was narrowly tailored.

Plaintiff's content-neutral argument fares no better. Plaintiff argues that Curfew was not content-neutral because it was "enacted in direct response to 'recent experience with protests concerning the continued employment of Officer Mensah by the WPD and upon community response to decisions and actions regarding police officers nationwide, most recently in Kenosha, Wisconsin and Louisville, Kentucky . . .'" (Dkt. 36, p. 6) Essentially, Plaintiff argues that the Curfew was enacted to quell the actions of those protesting police violence. *Id.*

The Curfew, however, does not state that it will only apply to those protesting against police violence. *See* (Dkt. 33, ¶¶ 15, 21; 32-1, Ex. A, Proclamation of Emergency) Indeed, the Curfew is clearly content-neutral because it prohibited people from being on Wauwatosa City streets, regardless of the content of speech they were engaged in, and without consideration of the activities in which they were engaged, unless they involved in a situation exempting them from the Curfew. (*Id.*) As this Court explained in *Rodriguez,* "the Curfew Ordinance did not target protesters; it applied to 'all persons,' except those individuals who engaged in a line of work that were required to provide certain services to the City." *Rodriguez* at 4 thus the Curfew was content-neutral and not selectively enforced. *Id.*

*Schultz v. City of Cumberland* held that even when the government enacts a content-neutral regulation on a class of conduct, citing the harmful secondary effects related to that conduct, that is, the subsidiary effects or non-communicative impact of the speech, courts presume that the government did not intend to censor speech, even if the regulation incidentally burdens particular instances of expressive conduct. *Schultz v. City of Cumberland*, 228 F. 3d 831, 841 (7th Cir. 2000).

6

Here, the "secondary effect" of the Curfew is curtailment of unlawful violence, such as obstructing traffic, setting fires in public structures, vandalism of personal property, intentional injury to police officers and firing guns in public places. (Dkt. 33, ¶¶ 15-21; 32-1, Ex. A, Proclamation of Emergency) These activities are not constitutionally protected, and therefore the Curfew's purpose of addressing these unlawful acts is not an unconstitutional restriction on the individual actors.

## IV. PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM MUST BE DISMISSED.

Plaintiff's Response, glosses over the First Amendment standard before concluding that unidentified "officers" retaliated against her based-on speech. (Dkt. 36, p. 7-8) Because Plaintiff does not argue that any named Defendant retaliated against her, her claim should be dismissed on that basis alone.

Nevertheless, Plaintiff's Response does not address whether she engaged in activity protected by the first Amendment—because she was not engaged in protected conduct. As noted in the moving brief, the First Amendment requires Plaintiff to demonstrate that she was: (1) engaged in activity protected by the First Amendment; (2) that she suffered an adverse action that would likely deter First Amendment activity in the future; (3) and that the protected activity motivated the adverse action." *Knowlton*, No. 20-CV-1660, 2022 WL 298797, at *10; *see also Bridges v. Gilbert*, 557 F. 3d 541, 546 (7th Cir. 2009); *Rowe v. Buss*, No. 21-1182, 2021 WL 5232512, at * 2 (7th Cir. Nov. 10, 2021). Importantly, and in connection to the first element under the standard, **the government action must be caused by the officer's malice and not the Plaintiff's criminal conduct.** *Nieves v. Barlett*, 139 S.Ct. 1715, 1724, 204 L. Ed. 2d 1 (2019)(emphasis added).

Here, it is undisputed that the Plaintiff was engaged in criminal conduct: she violated the emergency Curfew and obstructed traffic. Violating the law is not an activity protected under the First Amendment, and Plaintiff did not refute this point in her Response.

Further, there is no evidence to suggest that Defendants took action based on speech; rather, the undisputed evidence unambiguously shows that the Defendant Officers authorized the use of gas and other less lethal munition after being attacked with bottles and other items, while trying to enforce the City's emergency Curfew. (Dkt. 37, ¶¶ 27, 46, 47, 49, 55-56) As cited above, Supreme Court decision in *Nieves,* ruled that the government's action must be based on something other than the Plaintiff's criminal conduct. *Nieves,* at 1724. Here, it is undisputed that the Defendants actions were based solely on the criminal actions taken by Plaintiff and those in the crowd.

Plaintiff's First Amendment Retaliation claim must be dismissed.

## V. PLAINTIFF'S FOURTH AMENDMENT CLAIM FAILS.

Plaintiff's Response argues that Defendants McBride, Weber, Vetter, Wrucke, and McAtee subjected her to excessive force by way of supervisory liability. (Dkt. 36, p. 8-10) Plaintiff makes an erroneous application of the law in reaching this conclusion, and one that would completely eliminate individual capacity claims. Section 1983 claims do not allow for *respondeat superior* liability for the misdeeds of employees or other agents. *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021). That is, liability under § 1983 only exists where the defendant was personally involved in the excessive force. *See Smith v. Vill of Hazel Crest*, 2013WL 182814, at 2 (N.D. Ill. Jan. 17, 2013) (dismissing Plaintiff's excessive force claims for lack of personal involvement because the defendant officer did not exert any force upon the suspect during the arrest); *see also Outlaw v. Vill. of Shorewood*, No. 19-CV-1092, 2021 WL 424224, at \*6 (E.D. Wis. Feb. 8, 2021); *see e.g. Trout v. Frega*, 926 F. Supp. 117, 120-21 (N.D. Ill. 1996) *(*ruling that

8

"[t]he mere presence of [police] officers, without more, does not constitute their requisite § 1983 personal involvement in any constitutional violation which may have occurred").

Here, although Plaintiff argues supervisory liability, there is no evidence that any named Defendant specifically instructed another officer to deploy gas or less lethal munition on her. *See* (Dkt. 37, ¶¶ 27, 46, 47, 49, 55-56) In fact, none of the Defendant Officers even observed Plaintiff within the unlawful assembly. (Dkt. 37, ¶¶ 30, 31, 36, 41, 50, 52, 54, 59) Each officer had discretion on when, where, and how they would deploy their munition even if authorized by the named Defendants. (Dkt. 35, ¶ 15; Dkt. 37, ¶¶ 27, 46, 47, 49, 55-56)

Moreover, Plaintiff has not identified whether it was a City of Wauwatosa officer or if it was someone from a different jurisdiction that allegedly hit her with less lethal munition. Plaintiff's vague arguments that the City of Wauwatosa Mayor McBride, Police Chief Weber, Captain Vetter, Lieutenant Wrucke, and Sergeant McAtee subjected her to excessive force because they authorized the use of less lethal munitions belie Section 1983 liability. For example, every jurisdiction authorizes its officers to utilize force when making an arrest or when facing danger to themselves or others. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989) (explaining that the right to make an arrest carries with it the right to use force, and "not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment."); *United States v. Ocampo*, 890 F.2d 1363, 1369-70 (7th Cir. 1989)(explaining that officers may take steps "reasonably necessary to protect their personal safety and maintain the status quo…."). Plaintiff's broad sweeping argument that these high-ranking City of Wauwatosa officials are liable due to authorization of less than lethal munition is futile.

Plaintiff's argument that the City did not help in identifying the officer is patently false and constitutes a misrepresentation to the Court. Plaintiff argues that the "defendants' shoddy record
9

keeping and inability to track who caused harm to the plaintiff . . . should not prejudice the plaintiff.'" (Dkt. 36, p. 10) It is not the Defendants' job to identify who caused harm to the Plaintiff or to otherwise connect the dots between Plaintiff's allegations and her constitutional claims. Nonetheless, Defendants have produced everything that Plaintiff requested, including a munitions log, which identified each officer that deployed less lethal munition and the time they deployed the munition. *See* (Dkt. 39-11) Plaintiff's inability to identify the officer who allegedly used force on her does not change the Fourth Amendment Standard for these named Defendants and Plaintiff cannot speculate that it was a City of Wauwatosa officer now at the Summary Judgment phase.

The Fourth Amendment Claim must fail because Plaintiff cannot allege that any named Defendant personally used force on her.

### VI. PLAINTIFF FAILED TO ESTABLISH A MONELL CLAIM AGAINST THE CITY OF WAUWATOSA.

As an initial matter, Plaintiff's *Monell* claim fails, because she has not established a constitutional injury as discussed here and in the moving brief. (Dkt. 34, p. 23) Nevertheless, Plaintiff's Response concedes that "[p]roof of a single incident of unconstitutional activity is insufficient to impose liability under *Monell* without proof that the incident was caused by an existing, unconstitutional municipal policy which is attributable to a municipal policymaker." (Dkt. 36, p. 11); *citing Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997). Even if Plaintiff suffered a constitutional deprivation due to a City of Wauwatosa policy, she would need to show history and policymaker knowledge of that deprivation, which she did not.

There is no evidence that any City of Wauwatosa policymaker knew that the Civil Unrest Operation Plan, Civil Unrest Rules of Engagement, or any other City policy caused constitutional deprivations. *See* (Dkt. 33) In fact, Plaintiff herself, cannot identify a constitutional deprivation caused by a City of Wauwatosa policy. *See* (Dkt. 36, p. 11-12) Rather, Plaintiff argues that the

"City of Wauwatosa's policies when enforced, were done so arbitrarily as to cause a constitutional depravation and injury to the plaintiff." (Dkt. 36, p. 12) Plaintiff's conclusory argument does not identify which specific policy caused which constitutional deprivation, or how the policy caused the constitutional deprivation. *Monell* requires Plaintiff to show a "direct causal link between the municipal policy and the constitutional deprivation." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 509-10 (7th Cir. 1993). Plaintiff failed to do so.

In absence of a formal municipal policy, Plaintiff attempts to make an argument that the City of Wauwatosa had a custom or practice that caused a constitutional deprivation. This argument fails for the same reason as her express policy argument. A municipal "custom" may be established by proof of the knowledge of policy-making officials and their acquiescence in the established practice. *See McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 511 (7th Cir. 1993). Under the stringent custom standard, Plaintiff must show that the "policymakers were deliberately indifferent as to the known or obvious consequence." *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293 (7th Cir. 2009). Here, there is no evidence or even argument that any City of Wauwatosa policymaker should have been aware of practice or custom that caused a constitutional violation and acted deliberately indifferent to that practice. Plaintiff's custom claim must fail.

Plaintiff's failure to train argument fares no better. Plaintiff argued that "where a municipality's failure to train its employees evidences a deliberate indifference to the rights of its inhabitants, such a shortcoming can be properly thought of a city's policy or custom actionable under Section 1983." (Dkt. 36, 11); *citing Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 479 (7th Cir. 1997). Her argument is self-defeating, because she has not identified a City of Wauwatosa employee who allegedly caused her constitutional deprivation. Further, Plaintiff did

not identify any training program within her Complaint or Response Brief that was allegedly deficient. *See* (Dkt. 17, 36)

Moreover, as with express and *de facto* policies, there must be knowledge of the defective training. The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Id*. at 388. To show deliberate indifference, Plaintiffs must prove that (1) the City of Wauwatosa had actual or constructive notice that a particular defect in training existed and caused the violation; and (2) that the City of Wauwatosa disregarded such notice and retained the defective training program. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 1391, 137 L. Ed. 2d 626 (1997).

Plaintiff completely failed to even attempt to show that the City of Wauwatosa and Chief Weber had reason to know that a specific training program was deficient. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (ruling that plaintiff must prove that the policymakers had actual or constructive notice that persistent failure to train, supervise, or discipline will cause constitutional violations). Plaintiff also failed to show that the City of Wauwatosa and Chief Weber disregarded such notice and retained the defective training program.

Plaintiff has not put forth any evidence showing that the City of Wauwatosa policymakers had prior notice of their alleged deficiencies, therefore the *Monell* claim must be dismissed.

## VII. PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES.

Plaintiff's Response makes it clear that punitive damages are not warranted here. Plaintiff concedes that she was not the intended target of any chemical or less lethal munition, and she points to no Defendant who acted with "evil motive or intent," or with "reckless or callous indifference to [her] federally protected rights…." (Dkt. 36, p. 13); *see also Soderbeck v. Burnett*

*County*, 752 F. 2d 285, 290 (7th Cir. 1985).  As noted above, Plaintiff did not have a federally protected right to violate the law and obstruct traffic.

Even then, law enforcement did not deploy gas until after the unlawful assembly began attacking them with water bottles and lasers. (Dkt. 37, ¶¶ 27, 46, 47, 49, 55-56)  Once the unlawful assembly began attacking law enforcement, Lieutenant Wrucke, and Sergeant McAtee, despite already possessing permission to authorize the use of gas and other less lethal munition in response to the violent and threatening crowd, took an additional step and requested and received permission from incident command prior to authorizing the deployment of gas. (*Id.*)  Furthermore, Defendant Officers testified that pepper balls were deployed to protect the gas canister from coming back at them or from somebody picking it up.  *See* (Defs' Reply to PPFF # 17)

The careful and calculated actions by the Defendant Officers in response to the crowd's violent actions do not suggest any evil motive or reckless or callous indifference on their part towards the Plaintiff.  Thus, because the crowd in which Plaintiff was a part of, created the danger and need for force, no reasonable jury could conclude that the reactive actions by the Defendants were evil or callously indifferent to Plaintiff.

Plaintiff's punitive damages claim must be dismissed.

### VIII.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Plaintiff's inability to cite to any clearly established law in her Response validates the Defendants qualified immunity argument.  *See* (Dkt. 36, p. 14-15)  Qualified immunity protects government officials from liability, even in cases with plainly bad outcomes, if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine balances "the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted).

Government officials and police officers are entitled to qualified immunity "unless existing precedent squarely governs the specific facts at issue." *Cibulka v. City of Madison*, 992 F.3d 633, 639(7th Cir. 2021). To overcome qualified immunity, Plaintiff was required to (1) identify a closely analogous case that established her right, or (2) show that the violation or force was so plainly excessive that, as an objective matter, the defendants would have been on notice that they were violating her constitutional rights. *Id.* Plaintiff fails to show either.

Plaintiff's Response simply states that her rights were clearly established and that a reasonable law enforcement officer would have known that their actions violated her First and Fourth Amendment rights. (Dkt. 36, p. 14) This conclusory argument fails to identify any clearly established law that would have placed Defendants on notice that their actions violated the law.

## CONCLUSION

For the reasons set forth in the moving Brief and in this Reply, the Defendants respectfully request that the Court grant them summary judgment dismissing all of the Plaintiff's claims against them, with prejudice.

Dated this 18th day of April, 2022.

[SIGNATURE PAGE FOLLOWS]

14

WIRTH + BAYNARD
Attorneys for Defendants

By: */s/ Kyle R. Moore*
Kyle R. Moore, WI State Bar No. 1101745

P.O. Address:
788 North Jefferson Street, Suite 500
Milwaukee, WI 53202-4620
T: (414) 225-4060 / F: (414) 271-6196
E-mail: krm@wbattys.com