UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

PAIGE RADKE,
        Plaintiff,

  v.                                                      Case No. 21-C-0247

CITY OF WAUWATOSA, et al.,
        Defendants.
_____

## DECISION AND ORDER

Plaintiff Paige Radke brings this action under 42 U.S.C. § 1983 against the City of Wauwatosa, Wisconsin, and certain of its officials. Before me now is the defendants' motion for summary judgment.

## I. BACKGROUND

On February 2, 2020, Alvin Cole, a Black teenager, was shot and killed by Joseph Mensah, who at the time was an officer of the Wauwatosa Police Department. On September 30, 2020, the Milwaukee County District Attorney (the district attorney for the county in which Wauwatosa is located) informed Wauwatosa officials that, on October 7, 2020, he would publicize the results of his investigation into whether Mensah would be charged with a crime for killing Cole.

As many readers know, demonstrations against police violence towards African Americans were commonplace during the summer of 2020. Many such protests occurred in the wake of the killing of George Floyd by a white police officer in Minneapolis, Minnesota, on May 25, 2020. Other demonstrations were prompted by the shooting of Jacob Blake in Kenosha, Wisconsin, on August 23, 2020, by a white police officer. During some of these demonstrations, acts of arson and vandalism occurred. The violence that

occurred during the Kenosha protests was particularly severe. Many buildings were burned to the ground and two protesters were shot and killed, while a third was seriously injured. (Pl. Resp. to Def. Prop. Findings of Fact ("PFOF") ¶ 14.)

When the district attorney informed Wauwatosa officials of his impending decision, Wauwatosa's mayor, defendant Dennis McBride, anticipated that Wauwatosa would experience demonstrations like those that had occurred in Kenosha and elsewhere in the country. On September 30, 2020, he signed a proclamation of emergency that, among other things, imposed a curfew for the nights of October 7, 2020 through October 11, 2020. In the proclamation, McBride stated that he had determined that the announcement of the charging decision would likely "give rise to and create an imminent threat of a riot or civil unrest which will impair transportation, fire, health, and police protection and operation of other critical systems and will thereby create a state of emergency in Wauwatosa." (ECF No. 32-1 at 2.) McBride stated that "the proclamation of an emergency is necessary and expedient for the health, safety, and protection of people and property in Wauwatosa." (*Id.*) The proclamation imposed an emergency curfew that prohibited "pedestrian and vehicular traffic on Wauwatosa streets—except for persons who are going to or from work and government officials, social service workers, and credentialed members of the press acting in their official capacities—. . . between the hours of 7:00 p.m. and 6:00 a.m. on October 7, 2020, and ending at 6:00 a.m. on October 12, 2020." (*Id.* at 1.)

On October 9, 2020, at approximately 6:55 p.m., the plaintiff attended a demonstration that involved marching, chanting, and singing on Wauwatosa city streets. (Am. Compl. ¶ 23; Pl. Resp. to Def. PFOF ¶ 23.) At approximately 7:45 p.m., the

protestors stopped near a police line at Wauwatosa City Hall and began to sing. (Am. Compl. ¶ 24; Def. PFOF ¶ 23.) According to the defendants, at around this time, the police officers on the scene made multiple announcements in which they ordered the crowd to disperse because they had assembled in violation of the emergency curfew. (Def. PFOF ¶ 24.) The plaintiff states in her affidavit that she heard officers make an announcement but was unable to understand what was said. (Radke Aff. ¶¶ 8–9.) One of the police officers on the scene, Jacob Kaye, testified at his deposition that the crowd did not obey the orders to disperse and instead began throwing water bottles at the line of police officers. (Kaye Dep. at 48:4–49:1.) Officer Kaye also observed a green laser being pointed at police officers. (*Id.* at 49:2:49:5.) The plaintiff states in her deposition that she did not observe any protester behave in a "violent, abusive, threatening or otherwise disorderly manner." (Radke Aff. ¶ 6.)

According to the testimony of police officers on the scene, once demonstrators began throwing objects at officers, the decision was made to forcibly disperse the crowd by deploying canisters containing smoke and tear gas. (McAtee Dep. at 103:24–104:8; Kaye Dep. at 56:14–57:1.) Such canisters were deployed, and during deployment officers were authorized to shoot "less lethal munitions" (projectiles that are intended to be nonlethal) at protestors who attempted to pick up the canisters and throw them back at the officers. (McAtee Dep. at 97:23–98:19.) Defendant Chris McAtee, a sergeant with the Wauwatosa Police Department, was the officer who authorized the deployment of gas and smoke canisters. (Pl. PFOF ¶ 14.) He made the decision after receiving approval from defendant Luke Vetter, a captain. (*Id.* ¶¶ 14 & 16.) The use of less-lethal munitions

3

to prevent interference with the canisters was implied in the authorization to deploy the canisters. (*Id.* ¶ 15.)

The plaintiff was in the crowd of protesters when the gas and smoke canisters were used. She was exposed to the gas and suffered injury as a result. Moreover, a projectile struck her in the right foot and caused additional injury. The identity of the officer who fired the round that struck the plaintiff is unknown, and therefore no one knows whether she was the intended target. It's possible that she was hit with a stray round. The defendants do not contend that any officer shot at the plaintiff because she was attempting to throw a canister back at officers or was otherwise behaving in a way that warranted being shot with less-lethal munitions.

As a result of her injuries, the plaintiff commenced this suit under 42 U.S.C. § 1983. She brings three claims. First, she contends that the emergency curfew deprived her of her First Amendment rights of free speech and assembly by preventing her from protesting after 7:00 p.m. on the night of October 9, 2020. Second, she brings a claim for First Amendment retaliation in which she contends that the decision to use force on protesters was motivated by a desire to deter the plaintiff and others from continued activism against police violence. Third, she claims that she was subjected to excessive force in violation of the Fourth Amendment. The plaintiff asserts these claims against the City of Wauwatosa, Mayor McBride, Wauwatosa Police Chief Barry Weber, and other police officers in supervisory or command positions on the night in question (Captain Vetter, Sergeant McAtee, and Lieutenant Shane Wrucke).[1]

---

[1] In her amended complaint, the plaintiff named as defendants the City of West Allis and one of its officers, Jacob Kaye, along with 10 John Doe defendants. The plaintiff has

4

Case 2:21-cv-00247-LA    Filed 08/24/22    Page 4 of 14    Document 44

Before me now is the defendants' motion for summary judgment on all claims.

## II. DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

**B.  First Amendment Claim Involving Emergency Curfew**

The plaintiff contends that the emergency curfew violated her First Amendment rights to free speech and assembly by preventing her from protesting on the night of October 9, 2020. The parties agree that organized political protests are protected by the First Amendment. They further agree that the constitutionality of the emergency curfew turns on whether it was a permissible time, place, and manner restriction.[2] (Def. Br. in Supp. at 7; Pl. Br. in Opp. at 5–6.) Such restrictions do not violate the First Amendment provided that they are "justified without reference to the content of the regulated speech,

---

stipulated to the dismissal of all claims against these parties. (ECF No. 36 at 1.) Further, although the plaintiff had pleaded claims under the Due Process Clause of the Fourteenth Amendment, she has stipulated to the dismissal of such claims against all defendants. (*Id.*) Thus, I will not further discuss these claims or parties in this order.

[2] The plaintiff argues that the emergency curfew was not validly enacted under state law. However, the question of whether the curfew was valid under state law is not relevant to the analysis of whether the challenged actions of the defendants violated the First Amendment. That is so because the constitutionality of a time, place, and manner restriction is determined by federal constitutional standards rather than by state or municipal law.

5

that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 293 (1984)).

First, I address whether the curfew was justified without reference to the content of the regulated speech, *i.e.*, whether the curfew was content neutral. The curfew is content neutral on its face: it applied to all expression that might take place on a city street during the designated times. The plaintiff, however, contends that the curfew was not content neutral because the preamble to Mayor McBride's Proclamation of Emergency stated that one of the reasons for declaring a state of emergency was the "recent experience with protests concerning the continued employment of Officer Mensah by the WPD and . . . community response to decisions and actions regarding police officers nationwide, most notably in Kenosha Wisconsin and Louisville, Kentucky . . . ." (ECF No. 32-1 at 1.) The plaintiff contends that this language shows that the curfew was adopted "specifically to quell the actions of those protesting police violence." (Pl. Br. in Opp. at 6.) However, a regulation is content neutral "so long as it is *justified* without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791 (emphasis in original). Here, the plaintiff has omitted from her quotation from the proclamation the actual justification for the emergency declaration, which was that, given recent experience, it was "anticipated that an emergency will exist in the City of Wauwatosa due to conditions which will arise following [the announcement of the charging decision], including civil unrest throughout Wauwatosa which creates concerns for the safety of persons and property and will impair transportation, health, and police protection and other critical systems in Wauwatosa."

6

(ECF No. 32-1 at 1.) This justification for the curfew does not reference the content of any speech. Instead, it focuses on the safety concerns that could have arisen if conditions like those that had been experienced in municipalities such as Kenosha materialized in Wauwatosa. It is true that the protests referenced in the proclamation involved a specific viewpoint, but the stated justification for the curfew was public safety rather than anything related to the subject matter of the protests. Accordingly, I find that the curfew was content neutral. *Ward*, 491 U.S. at 791 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.").

Second, I address whether the curfew was narrowly tailored to serve a significant governmental interest. I do not understand the plaintiff to be disputing that preventing the violence, arson, and vandalism that may occur if a protest turns into a riot is a significant governmental interest. *See, e.g., McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (recognizing that public safety is a significant interest). The plaintiff seems to suggest that the curfew does not actually serve this interest because it "was not enacted in response to an actual emergency, riot or disaster." (Br. in Opp. at 7.) However, she does not develop a legal argument along these lines. She does not, for example, cite a case holding that a municipality must wait for a riot or disaster to materialize before taking action to protect public safety. Nor does she argue that, even though no such case exists, the law should be extended to prohibit emergency curfews except when declared in response to an ongoing riot. Nor does the plaintiff argue that a municipality may not rely on the experience of other municipalities when deciding whether an emergency curfew is needed to protect public safety, which is what Wauwatosa did when it acted based on the

7

recent experience of cities such as Kenosha. Thus, given the absence of any meaningful argument by the plaintiff on these points, I conclude that Wauwatosa's emergency curfew served a significant government interest.

As for narrow tailoring, that requirement is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). In the present case, the plaintiff does not identify any alternative to the curfew that would have allowed Wauwatosa to achieve with equal effectiveness its interest in preventing demonstrations from turning into riots that threaten public safety. Instead, the plaintiff combines her argument regarding narrow tailoring with her argument about the availability of alternative channels for expression. (Pl. Br. in Opp. at 6.) Thus, I will not further discuss narrow tailoring and will instead assume that this requirement would be satisfied so long as the curfew left open ample alternative channels for communication.

As to that requirement, the plaintiff seems to be arguing that the curfew did not leave open alternative channels for communication because it prevented all protesting on city streets at night.[3] However, the curfew did not prohibit any protests anywhere in the city during daytime hours. The plaintiff does not explain why daytime protests would not have been adequate alternatives to protests at night, when criminal activity is harder to prevent. She does note that the typical workday is from 9:00 a.m. to 5:00 p.m., but she does not develop an argument showing that this made protesting infeasible for her. (Br.

---

[3] The curfew began at 7:00 p.m. and ended at 6:00 a.m. I take judicial notice that, during early October in Milwaukee County, the sun sets at about 6:30 p.m. and rises at about 7:00 a.m.

8

in Opp. at 6.) Moreover, the plaintiff does not explain why protesting during the day on the weekend would not have been an adequate alternative for those who worked 9–5. In short, "there has been no showing that the remaining avenues of communication [were] inadequate," *Ward*, 491 U.S. at 802, and therefore I conclude that the final requirement for a valid time, place, and manner restriction was met. The defendants are entitled to summary judgment on the plaintiff's First Amendment challenge to the emergency curfew.

**C.    First Amendment Retaliation**

The plaintiff next contends that, when police officers deployed tear gas and used less-lethal munitions to disperse the crowd, they retaliated against the protestors for exercising their First Amendment rights. To establish a prima facie case of unlawful retaliation, the plaintiff must show (1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). Once a prima facie case is established, the burden shifts to the defendant to show that the activity would have occurred regardless of the protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If the defendant carries this burden, the plaintiff must demonstrate that the proffered reason is pretextual or dishonest. *Id.*

I will assume that the plaintiff was engaging in activity protected by the First Amendment (protesting police violence) and that subjecting her to tear gas and less-lethal munitions was likely to deter First Amendment activity in the future. The obvious problem with the plaintiff's retaliation claim is that she has no evidence that the decision by police

9

officers to use force to disperse the crowd was motivated by the subject matter of the protest. As discussed in more detail in connection with the plaintiff's excessive-force claim, the officers who authorized the use of tear gas and less-lethal munitions testified that they did so to enforce the curfew and because the protestors had thrown water bottles at police officers. The plaintiff points to no evidence suggesting that these officers are lying or that they would not have authorized the use of such force under the same circumstances if the subject matter of the protest had been different. Accordingly, the defendants are entitled to summary judgment on the plaintiff's First Amendment retaliation claim.

D.     **Fourth Amendment Excessive Force**

Finally, the plaintiff claims that she was subjected to excessive force in violation of the Fourth Amendment, and that the defendants are liable because they authorized the use of force against protesters. An initial question that the parties do not address is whether the plaintiff was even subject to a "seizure" within the meaning of the Fourth Amendment. If she was not, then no defendant could have violated her Fourth Amendment rights. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that claims that law enforcement officers used excessive force during a seizure must be analyzed under the Fourth Amendment). When a plaintiff claims to have been seized by force, she generally must show that an officer applied physical force to her body "with intent to restrain." *Torres v. Madrid*, __ U.S. __, 141 S. Ct. 989, 998 (2021). In the present case, the plaintiff does not contend that any law enforcement officer used force with an intent to restrain her. Although the plaintiff was subjected to tear gas and was struck with a projectile, she presents no evidence that these forms of force were used by an officer

10

who intended to restrain her. Instead, the record shows that the officers' intent in using tear gas was to disperse a crowd of people in which she happened to be located. (McAtee Dep. at 103:24–104:8; Kaye Dep. at 56:14–57:1.) Further, because the plaintiff does not know who fired the projectile that struck her, she cannot show that she was the target of the shot or that the purpose of the shot was to restrain her. Perhaps it would be reasonable to say that if an officer shot a projectile at her to prevent her from interfering with a gas canister, then the purpose of the shot would have been to restrain her from interfering. But again, because the plaintiff cannot prove that she was the intended target, she cannot show that any officer intended to restrain her from interfering. Courts have generally held that when a police officer accidentally shoots someone, the person has not been seized. *See Napper v. Hankison*, No. 3:20-cv-764-BJB, 2022 WL 3008809, at *19–20 (W.D. Ky. July 28, 2022) (collecting cases supporting the proposition that "the unanimous approach of the courts of appeals" does not "allow bystanders inadvertently harmed by state force to assert Fourth Amendment claims").

In any event, because the parties apparently agree that the Fourth Amendment governs the plaintiff's excessive-force claims, I will attempt to apply the Fourth Amendment's objective reasonableness standard. In assessing a claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397 "A court (judge or jury) cannot apply this standard mechanically." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Rather, the inquiry "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. Those circumstances include "the relationship between the need for the use of force and the amount of force used; the

11

extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. Courts assess the totality of the circumstances from the perspective of a reasonable officer on the scene. *See Graham*, 490 U.S. at 396. "This perspective is critical." *Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020). "[A] court must consider the amount and quality of the information known to the officer at the time." *Burton v. City of Zion*, 901 F.3d 772, 780 (7th Cir. 2018) (internal quotation marks omitted).

This case involves two uses of force: deployment of the gas canisters, and use of less-lethal projectiles. The plaintiff cannot prove that officers decided to use either form of force against her specifically. Rather, as discussed, the evidence shows that officers decided to deploy gas canisters in response to the actions of the crowd of protesters in general, and the plaintiff cannot prove that any officer intended to shoot her with a projectile. Thus, even if the plaintiff's individual actions would not have justified the use of force against her alone, it would not follow that the force used was objectively unreasonable. The question would be whether the officers acted reasonably in response to the actions of the crowd as a whole and the actions of the persons or persons whom the officer who fired the projectile intended to strike.

The plaintiff, however, focuses on her own actions and does not argue that the officers' actions were unjustified with reference to the actions of the crowd as a whole. (Pl. Br. in Opp. at 10 (arguing that "the plaintiff was engaged in no conduct or behavior which would warrant the level of force inflicted upon her").) The plaintiff cites no case holding that it is unreasonable for police officers to deploy gas canisters against a crowd

12

that has assembled in violation of an emergency curfew, has ignored orders to disperse, and has begun throwing objects at police officers.[4] Further, the plaintiff cites no case holding that it is unreasonable for police officers to shoot less-lethal projectiles at members of a crowd who are attempting to throw gas canisters back at the police. Finally, the plaintiff makes no attempt to argue that, as a matter of first impression, the court should deem these uses of force unreasonable under the circumstances. She does not, for example, identify some lesser form of force that the police could have employed to enforce the curfew and to prevent the crowd from continuing to throw objects at police officers. The plaintiff seems to be arguing that the police should have just allowed the crowd to remain on the street, but she cites no case suggesting that the Fourth Amendment forbids law enforcement from taking action to disperse a crowd that has assembled in violation of a curfew and has started to throw objects. Accordingly, I conclude that the plaintiff has not established that any officer violated the Fourth

---

[4] The plaintiff states in her affidavit that she did not personally hear orders to disperse, but she acknowledges that officers made some announcement to the crowd before deploying gas canisters. (Radke Aff. ¶¶ 8–9.) Because the officers testified that they gave orders to disperse (McAtee Dep. at 123:21–124:2), and because the plaintiff's inability to understand the orders does not imply that the officers would have known that the crowd did not understand the orders, I conclude that a reasonable jury could not find that the officers acted unreasonably in thinking that they gave intelligible orders to disperse. Likewise, officers testified that the crowd was throwing water bottles. (Kaye Dep. at 48:4–49:1.) Although the plaintiff states that she did not personally observe protestors behaving in a "violent, abusive, threatening or otherwise disorderly manner" (Radke Aff. ¶ 6), she does not specifically deny that some members of the crowd were throwing water bottles. Moreover, even if her affidavit could be reasonably construed as claiming that she did not see anyone throw a water bottle, the plaintiff does not claim that she was always watching every person in the crowd. Thus, from the fact that the plaintiff did not personally see someone throw a water bottle, the jury could not reasonably infer that no water bottles were thrown. Accordingly, the plaintiff's affidavit does not create a genuine factual dispute over whether the officers observed members of the crowd throwing water bottles at police.

Amendment by either using gas canisters and less-lethal projectiles or authorizing other officers to use such munitions.

Likewise, the plaintiff cannot prevail on her excessive-force claim against the City of Wauwatosa under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) That is so because "a municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021) (quoting *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010)). For the reasons discussed above, the plaintiff cannot establish that any police officer used excessive force against her or authorized the use of such force against her. Accordingly, the City of Wauwatosa is not liable under *Monell*.

**E.     Other Grounds for Summary Judgment**

In addition to arguing that they are entitled to summary judgment on the merits of the plaintiff's constitutional claims, the defendants argue that they are entitled to summary judgment on the plaintiff's request for punitive damages and on their defense of qualified immunity. Because I have granted summary judgment on the merits of the plaintiff's claims, these remaining issues are moot. Therefore, I will not discuss them.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 30) is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 24th day of August, 2022.

/s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge